# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:10-CR-00018**

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

**v.**

**RONALD WAYNE EDWARDS**                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Ronald Wayne Edwards's Motion to Suppress [DN 36] the evidence resulting from the warrant search of his home and the statements he made following his arrest. A hearing on the matter was held on November 10, 2010, and briefs were filed. For the reasons that follow, the motion is denied.

## I. BACKGROUND FACTS

This case arises out of Edwards's alleged distribution of controlled substances. According to the government, from January 6, 2009, through May 14, 2010, a cooperating witness observed Edwards engage in multiple instances of drug trafficking including the sale of prescription pills and methamphetamine. On January 6, 2009, the cooperating witness also reported that Edwards carried a semi-automatic pistol during a methamphetamine transaction. On several occasions, Edwards directed his girlfriend, Christina Ann Gillette, to consummate the drug transactions. On May 14, 2010, Gillette was witnessed purchasing a substance believed to be methamphetamine. Gillette then took the substance to Edwards's residence where the cooperating witness later observed Gillette and Edwards smoking the substance.

On May 19, 2010, federal officers executed a search warrant at Edwards's home for violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). Firearms, methamphetamine, and

drug paraphernalia were seized in conjunction with the search. An arrest warrant was also executed and Edwards was detained at the Kentucky State Police office in Madisonville, Kentucky. After signing a Miranda Waiver Form, Edwards made several incriminating statements while in custody. Edwards alleges that prior to signing the waiver form, he had been awake for three straight nights due to his methamphetamine use, and had taken an unknown combination of pain killers and anti-anxiety medications. Edwards has moved to suppress both the evidence collected from his home and the statements he made while in police custody.

## II. DISCUSSION

Edwards presented three issues at the suppression hearing. The first being whether the search warrant was supported by probable cause. Edwards argued that the affidavit in support of the search warrant only showed probable cause of using, but not dealing, drugs at his residence. Secondly, Edwards argued that the facts supporting trafficking and gun possession were otherwise stale. The last issue presented by Edwards was whether the waiver of his Miranda rights was knowing and intelligent. The Court addresses the issues in turn below.[1]

### A. Probable Cause of Drug Trafficking

Edwards first alleges that the affidavit in support of the search warrant failed to establish probable cause to believe evidence of drug trafficking would be found at his residence. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The "probable cause" standard is aptly summarized in United States v. King, 227 F.3d 732 (6th Cir. 2000):

---

[1] Edwards also moved for return of certain non-contraband items at the suppression hearing pursuant to Fed. R. Civ. P. 41(g). Because the government did not object to the request, the motion is moot and will not be addressed in this opinion.

> Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. This determination does not lend itself to the application of rigid legal rules. Rather, the probable cause standard is a practical non-technical conception wherein we deal with probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Stated otherwise, probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.

Id. at 739 (citations omitted).

To determine whether probable cause for a search exists, a magistrate judge "make[s] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Reviewing courts look only at "whether the totality of the circumstances [described in the affidavit] supports a finding of probable cause." United States v. Woosley, 361 F.3d 924, 926 (6th Cir. 2004). As long as the "magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing," the warrant will be upheld. Gates, 462 U.S. at 236. (citations and internal quotations omitted).

21 U.S.C. § 841(a)(1) makes it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Edwards alleges that the magistrate inappropriately determined that reasonable grounds existed to believe that evidence of a violation of 841(a)(1) would be found at the residence when, at most, all the affidavit showed was that drugs were used at Edwards's residence. However, on May 14, 2010, only four days before applying for the warrant, the cooperating witness provided information that Ms. Gillette had

purchased methamphetamine and then shared it with Edwards at his residence. The offense of trafficking occurred once the drugs were transferred, irrespective of whether Ms. Gillette received money in exchange for the drugs. See United States v. Layne, 192 F.3d 556, 569 (6th Cir. 1999) (two people sharing drugs constitutes distribution under § 841(a)(1)); United States v. Washington, 41 F.3d 917, 920 (4th Cir. 1994) (same); Anderson v. United States, 246 F. Supp. 2d 758, 763 (E.D. Mich. 2003) (same). Thus, the affidavit was sufficient to show that recent drug trafficking had taken place at Edwards's residence, and it was reasonable for the magistrate to believe that evidence of drug trafficking would be found at the residence.

**B. Seizure of Firearms**

18 U.S.C. § 924(c)(1)(A) criminalizes using, carrying, or possessing a firearm during and in relation to any drug trafficking crime. Edwards contends that the seizure of firearms was inappropriate as the only nexus between firearms and drug trafficking occurred on January 6, 2009, and therefore any facts supporting a belief that firearms would be found at the residence was stale. This argument fails because all the firearms were subject to seizure as contraband in plain view regardless of when the gun was used in conjunction with a drug transaction. The plain view doctrine provides that "officers may make a warrantless seizure of contraband found in plain view during a lawful search for other items." Minnesota v. Dickerson, 508 U.S. 366, 369 (1993). See United States v. Case, 2008 WL 4865967, at *9 (E.D. Tenn. Nov. 10, 2008) ("If an officer is lawfully present and the incriminating character of an item is 'immediately apparent,' and if in 'plain view,' the officer may seize that item.").

Here, the search warrant justified the officers' entry into Edwards's home. The Sixth Circuit has held that "guns are well-recognized tools of the narcotics trade; 'dealers in narcotics are well

4

known to be dangerous criminals usually carrying firearms.'" Case, 2008 WL 4865967 at *9 (quoting United States v. Moreno, 658 F.2d 1120, 1123 (6th Cir. 1981)). "In other words, bearing in mind the relationship between guns and drugs, . . . guns [are] obviously contraband." Case, 2008 WL 4865967 at *9. Because evidence of drugs and drug paraphernalia were found during the execution of the warrant, any firearms in plain view were also seizable contraband under the "plain view exception" to the specificity warrant requirement. Accordingly, Edwards's motion to suppress evidence of his firearm possession is denied.

### C. Miranda Waiver

Lastly, Edwards alleges that the incriminating statements he made while in police custody should be suppressed because he did not knowingly and intelligently waive his Miranda rights. The Fifth Amendment privilege against self-incrimination is implicated whenever an individual is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478 (1966). Because custodial interrogations are said to be inherently coercive, Miranda established that a suspect must be apprised of certain rights to protect the privilege against self-incrimination. Id. at 444. See Dickerson v. United States, 530 U.S. 428, 435 (2000). However, a suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. Therefore, based upon the "totality of the circumstances surrounding the interrogation[,]" the government must establish by a preponderance of the evidence that the defendant made both an uncoerced choice and had the requisite level of comprehension for the Court to conclude that a defendant's Miranda rights were appropriately waived. Fare v. Michael C., 442 U.S. 707, 725 (1979). See Miranda 384 U.S. at 475; Colorado v. Connelly, 479 U.S. 157, 168 (1968).

5

The inquiry is usually two-fold, but the Defendant has not challenged whether the waiver was voluntary. Therefore, the Court will focus on the second factor, that is, whether the waiver was knowingly and intelligently made. In other words, whether the suspect waived his Miranda rights "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. The issue for the Court is not whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." Colorado v. Spring, 479 U.S. 564, 574 (1987). "'[T]he particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused'" are relevant to this analysis. Miranda, 451 U.S. at 482 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

As an initial matter, the fact that Edwards was sleep deprived following three nights of methamphetamine use and had taken an unknown combination of Percocet and Zanax prior to waiving his Miranda rights is not dispositive of an "unintelligent waiver." It is generally accepted that officers may question a suspect who is intoxicated or impaired as long as the suspect was not so impaired that his will was overborne. United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008). Although a suspect's "[s]leeplessness, alcohol use and drug use are relevant to our analysis . . . '[i]ntoxication and fatigue do not automatically render a confession involuntary.'" Id. at 788 (quoting United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990)). See Britt v. Commonwealth, 512 S.W.2d 496, 500 (Ky. 1974) ("Loss of inhibitions and muscular coordination, impaired judgment, and subsequent amnesia do not necessarily (if at all) indicate that an intoxicated person did not know what he was saying when he said it."). See, e.g., United States v. Dunn, 269 F. App'x

6

567, 572-73 (6th Cir. 2008) (suspect under the influence of Vicoden and marijuana at the time of his arrest knowingly and intelligently waived Miranda rights because he was nevertheless "alert, coherent, and lucid"); United States v. Contreras, 372 F.3d 974, 977 (8th Cir. 2004) (suspect who used methamphetamine the evening before his arrest, and marijuana on the day of, waived Miranda rights where officers testified he appeared sober and in control at time of interview); U.S. v. Bowman, 2011 WL 294289, at *7 (E.D. Tenn. Jan. 27, 2011) (Miranda waiver voluntary despite alleged intoxication where the police "describe[d] [the defendant's] lack of slurred speech, his ability to maintain eye contact and respond to questions, and the level of detail he provided in describing the location where he manufactured methamphetamine."); Hughes v. Commonwealth, 2006 WL 1360277, at *3-4 (Ky. May 18, 2006) (defendant who claimed he did not remember exactly what had transpired during custodial interrogation because he had been under the influence of Klonopin, nevertheless understood and waived Miranda rights); Soto v. Commonwealth, 139 S.W.3d 827, 846-47 (Ky. 2004) (suspect under the influence of PCP, cocaine, and methamphetamine waived Miranda rights because no evidence presented to show he lacked sufficient possession of his faculties to give a reliable statement). Therefore, the fundamental issue here is whether, at the time he gave his statements, Edwards understood his Miranda rights and the effect of waiving them notwithstanding the fact that he may have been impaired.

The totality of the circumstances in this case shows that Edwards's waiver was knowing and intelligent. Edwards was read his rights point by point and asked if he understood each before the officers moved on. He never indicated he did not understand his rights and communicated clearly with the officers. Edwards then signed the Miranda Waiver Form indicating he understood his rights. During a break in the interrogation, Edwards asked for additional pain medication and was

able to clearly articulate which medications he was prescribed and the corresponding dosage from a bag of over 15 different prescription medications. The officers also testified that Edwards appeared lucid throughout the interrogation and exhibited normal comprehension in responding to the officer's questions.

Although Edwards was on medication and sleep deprived, there is no indication that this affected his ability to knowingly and intelligently waive his Miranda rights. Where a defendant voluntarily, knowingly and intelligently waives his Miranda rights, his subsequent incriminating statements are admissible at trial. See, e.g., United States v. Walls, 116 F. App'x 713, 718 (6th Cir. 2004); Machacek v. Hofbauer, 213 F.3d 947, 954 (6th Cir. 2000). Accordingly, the motion to suppress is denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Edwards's Motion to Suppress [DN 36] is **DENIED**.

cc: Counsel of Record